Thank you, Your Honors. If it may please the Court, Adam Zolans on behalf of the appellant, Frima Lewis, I'd like to reserve three minutes for rebuttal. This appeal raises a serious question as to what a civil rights plaintiff needs to allege in order to state a 1983 action. The appeal arises because the District Court misapplied the appropriate pleading standard as articulated by the High Court in Bell Atlantic v. Twombly and required more factual detail than what should be required. In addition, the Court abuses discretion by taking judicial notice of disputed facts for the purpose of resolving factual issues at the pleading stage. The elements at issue here, discriminatory intent as well as other state-of-mind elements, must be pled through inference as this information is almost always exclusively in the control of the defendant. And it is as such that the allegations taken as a whole, the complaint as a coherent whole, sufficiently meets the minimum requirement as articulated  Well, why don't you help me with, speaking just for myself, but why don't you give me, I would be helped if you would give me a very brief, coherent statement of what your claim is. The complaint alleges that the City of Berkeley engaged in a course of conduct the results of which discriminates against the plaintiff by ceasing her freedom of movement, by restricting her freedom of movement, by ceasing the operation of all local truck-sharing services that the City acted with the intent or motive to unfairly burden the ability of the African-American population to move freely within or without of the City. And they did that how? It was through the amendment of the zoning ordinance, which in effect prohibited the operation of any new truck-sharing services and then affirmatively acted to burden and ultimately revoke the use permit of the sole remaining truck-sharing service. So the result is that there are no more truck rental services in the City of Berkeley? That's correct, Your Honor. And how does that affect the African-American community more than anybody else, the student community or the other? The area of West Berkeley is comprised of a plurality of African-American residents. And it is not the claim that the actions taken by the City only affected the African-American population. It did, in fact, also affect other minority residents and low-income residents. But the fact that the City's actions incidentally – Maybe I don't understand. Is this the entire City of Berkeley that doesn't have any anymore, or is this just one area? This is the area of West Berkeley. Just West Berkeley? And there are U-Haul and other facilities elsewhere in Berkeley? There are other truck-sharing services that are available in Oakland. There's nothing in the entire City of Berkeley? There are no truck-sharing facilities in the entire City of Berkeley? Not to my knowledge. Not to my knowledge. These services are relied upon by minority residents to move freely in and out of the community and seek new and better employment, housing, and education opportunities. I understand that, but that doesn't – how does this impact them more than it impacts, say, all of those people, the students at the university or other people who need to rent trucks? Well, it does also impact others, but the fact that it impacts others does not mean that the City did not have a discriminatory purpose in its conduct. Well, what's the proof of the discriminatory purpose? Well, as the Supreme Court recognizes – Well, how did you allege it? I shouldn't say proof. What are the allegations of discriminatory purpose? Well, there is an allegation alleging that the City's actions were motivated, at least in part, to appease certain outspoken members of the community, espousing racial biases and prejudice against minority residents, an allegation which the District Court below completely ignored as evidenced by his opinion and order. And where is that in the complaint? Pardon me, where in the complaint? Yeah. It could be found on page 176 of the excerpt of record. It is allegation 9 of the complaint. It's further alleged that the City did not, in revoking the use permit of the sole remaining truck-sharing service, that the City did not operate under uniform applied fixed standards, but rather the City's decision to revoke the sole remaining use permit was ad hoc and deviated from their ordinary procedure. The City didn't prohibit the operation of similarly situated businesses, such as car rental and car-share opportunities, which have a customer base of predominantly white customers. Were they – does this have anything to do with truck-sharing? Or truck rental? The racial animus and biases and prejudices? I'm not making the link. I'm not sure what it is. To motivation. The City's action, part of the complaint is stating a course of conduct theory, that by first amending its zoning ordinance to prohibit truck-sharing services, and then by affirmatively acting to burden and revoke the use permit of the last remaining truck-sharing service. When the City passed a resolution to revoke the use permit of the U-Haul facility located in San Pablo, it is the allegations, as it's stated in the complaint, that this revocation of the use permit was done with discriminatory intent. What Twombly requires is plausible grounds for relief. It does not impose a probability requirement at the pleading stage. And the court below erred by taking judicial notice of self-interested statements made by the City documents supporting the proposition that there was other non-discriminatory purposes. And there is no requirement that a challenged government action rests solely on a discriminatory purpose. Rarely can it ever be said, as the Supreme Court recognized in Washington v. Davis, rarely can it ever be said that a government or a municipality acting under a broad mandate selected or affirmed a course of action that rested solely on one purpose or that there was even a primary purpose. And I suggest to the Court that there is really no logical difference between a permissible factual allegation and an impermissible legal conclusion. It's only a matter of degree, and the degree of factual specificity that's required depends in part on the policy behind the pleading stage. And I suggest that when there's a high interest in a civil rights case, that specific factual details should not be required because, as I stated earlier, that the intent, the state of mind of the defendant is always in the exclusive control of the defendant. And so at the pleading stage, a plaintiff, the result of a strict pleading standard will screen not meritorious cases, cases that have a high probability of success as a trial, but one in which it's not evident at the pleading stage. I'd like to see my time. I'd like to reserve some time for it. May it please the Court. My name is Christy Van Herrick, and I'm appearing on behalf of the city of Berkeley. Magistrate Judge Brazil correctly applied the Twombly standard. He looked, took a two-part examination. About a month before the Iqbal case came out, he correctly applied the Iqbal case, not even with the benefit of being able to read it, by first looking at whether there are any conclusory statements and deciding not to take as true those conclusory statements, and then looking at the well-pleaded facts to see, do these well-pleaded facts create an inference of some discriminatory intent? And when he... In which category did he put the statement referenced by plaintiff's counsel regarding appeasing individuals who had espoused racially derogatory remarks? My recollection of his order was that he did not specifically address that. He did address it in oral argument. He just noted it in oral argument that that allegation had been made. I think that allegation is important to look at, because what that allegation actually says is simply that this city council acted to appease vocal members of the community, and then it says those vocal members of the community may have held racial animus. Well, we disagree with that statement. Nevertheless, because this is a 12b6, taking it as true, it doesn't say that the city council knew that anyone held a racial animus or that they acted to do anything other than take into consideration the oral testimony that was given in public hearing as part of the U-Haul revocation. Well, it seems to me that the operative paragraphs here are that one and the one that says that they deviated from their normal procedures in order to do this, because that's the most specific that you get. And there the judge did comment on it, I take it, and said that it fails to say what was ad hoc and that there's a long process that goes on before you can revoke these things. He did. He examined both in oral argument and in his opinion, examined whether there was any factual basis to back up the statement. There was a statement in the complaint that the city didn't follow procedure. There's no explanation of how they deviated from procedure. So the city put in something that he took judicial notice of. Yes. There were two documents that he took judicial notice of. The first is a 1998 amendment to the zoning ordinance, and that was called the West Berkeley Plan. It was an amendment to put into place a long, thought-out process to make some changes to West Berkeley zoning law to make the community more integrated, more walkable. It's a partially commercial and residential area. They wanted to bring in businesses and promote businesses that would reduce traffic, get people walking, get people to public transportation. So there were a number of kinds of businesses that that ordinance said, we're going to say these types of businesses we're not going to allow in certain nodes. Those are intersections, certain areas of San Pablo Avenue where we want to promote foot traffic. It wasn't just truck rentals. It was truck rentals, car rentals, I believe car washes, open-air markets, lots of different businesses. But U-Haul was not at all stopped from operating because of this 1998 ordinance. In fact, they operated until 2007, and that's the second document. That's the revocation resolution taken by City Council. After hearings were done by the ZAB, the Zoning Adjustment Board, this recommendation was made by ZAB. Then it went to a hearing in front of the City Council. Public testimony was given. They finally passed this resolution saying, we are going to revoke U-Haul's permit. And that was because U-Haul had been operating in violation of its permit. It had been using the community as its parking. It had been parking its trucks all over West Berkeley. It had been staging rentals, having people drop off trucks, to the point where college students were leaving their garbage on people's lawns. This is what was going on, and that's why U-Haul— So this is all in the documents that were— This is all in the resolution that the City Council passed. And those two documents were submitted as judicial notes. They were documents that—the fact of those documents are the two acts that the plaintiff was relying on in her case, the 1998 ordinance and the 2007 revocation. And they're simply the documents that confirm those two acts. So the judicial notice that was taken of those documents was of public records, the authenticity of which is not challenged or questioned. You know, the issue of Twombly is that if you have facially neutral facts, those facially neutral facts taken together need to at least draw some inference or have some context that shows that despite that on the face they're facially neutral, they lead to some nefarious or, you know, improper intent. And that is not the case here. If there are no further questions, I think I'm done. Thank you very much. Thank you. Thank you. By the court taking judicial notice, the panel does not object to the propriety of the court taking judicial notice of the fact of the ordinance or the fact of the resolution. But when the court took judicial notice of the facts contained therein to support, to reach the conclusion that there was nondiscriminatory purposes for the city's action, in effect it will allow a city to immunize themself by simply putting forth self-interested statements in the form of city documents or declarations saying we don't have a bad purpose. And that is not what is – this is not a motion for summary judgment. The issue on this appeal is whether the factual allegations as contained in the complaint make a claim that's plausible on its face that the city had a discriminatory intent or motive. I think that what the city is requesting and what the district court required is antithetical to the entire legal process, that a party is not required to first prove its case and then conduct discovery. Well, that's what some people thought when the Supreme Court decided Twombly. I don't agree. I mean, I think that in Ashcroft, Ashcroft is a more strict interpretation of Twombly, but that's – there's different basis for that. I mean, the case in Ashcroft dealt with high-ranking government officials being sued in an individual capacity for taking decisive action in response to dangers, unexpected dangers like 9-11, and I think that the court did apply a strict interpretation of the pleading standard there, in addition to the fact that there was a qualified immunity defense. And the case here differs substantially from Ashcroft, and I do believe that, taken as a whole, that the allegations in the complaint at minimum support an inference that the city acted with a discriminatory intent or motive, and I think as a matter of social and public policy that requiring a plaintiff to have information into the mind of the defendant at the pleading stage, it has a very chilling social effect, and this is particularly important in the civil rights action. Thank you. The case just argued is submitted. That concludes the court's calendar for this morning, and the court stands adjourned.
judges: Collins, Schroeder, Rawlinson